## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMERGING MONEY CORP., ET AL.,<br>EMERGING ADMINISTRATIVE<br>SERVICES, LLC, &<br>EMERGING ACTUARIAL DESIGNS, LLC,<br><br>              Plaintiffs,<br>  v.<br><br>UNITED STATES OF AMERICA,<br>             Defendant. | 3:09-cv-1502 (CSH) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION AND RELEVANT FACTS

Plaintiffs Emerging Money Corporation (EMC), Emerging Administrative Services, LLC and

Emerging Actuarial Designs, LLC allege that the Internal Revenue Service (IRS) wrongfully

disclosed information when it asserted to certain taxpayers that the transactions that Plaintiffs had

promoted to them were "sham transactions" and part of a "Ponzi scheme."  Defendant, the United

States of America, filed a Motion for Summary Judgment (the "Motion") [Doc. 24] asserting that

the IRS was permitted to make those statements under the Internal Revenue Code.  Plaintiffs oppose

the Motion.  The parties do not disagree about any of the relevant facts; they disagree only about the

law.   Thus, this issue is ripe for summary judgment.

It is justifiably assumed that for the most part, the IRS may not reveal a taxpayer's returns

or related information to third parties without his or her permission.  The governing statute, 26

U.S.C. § 6103, provides: "Returns and return information shall be confidential," and except as

1

authorized by the statute, "no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section."  § 6103(a).  However, the statute contains a considerable number of exceptions.  "Revised section 6103 represents a legislative balancing of the right of taxpayers to the privacy of tax information in the hands of the IRS and the legitimate needs of others for access to that information."  *Stokwitz v. United States*, 831 F.2d 893, 895 (9th Cir. 1987).  This case presents the question whether the IRS's disclosure of certain information related to Plaintiffs fell under one or more of the statutory exceptions.

The Court assumes familiarity with the parties' briefs, and provides only a summary of the relevant facts here.  The three plaintiff entities, all of which were controlled by one Robert Strauss and have been dissolved, provided various financial services.  In or about the 2002-07 period, Plaintiffs promoted to their clients a program called "Stock to Cash" or "the 90% loan program."  A client would transfer shares of stock to the lender, Alexander Capital Markets (ACM), and ACM would give him an upfront cash payment styled a "loan."

Starting in 2007, the IRS investigated the Stock to Cash program and concluded that these transactions were not in fact loans, but rather were sales of stock disguised as loans, evading the capital gains tax.  In addition, the IRS determined that the Stock to Cash program was a Ponzi scheme, using money coming in from new investors to pay obligations to existing investors.  *See* Declaration of Revenue Agent Judy Steiner ("Steiner Decl.") [Doc. 28-3], attached to the Motion, at ¶ 6.  Plaintiffs, as promoters of the Stock to Cash program, came under investigation by the IRS and the Oklahoma Department of Securities.

In January 2008, the IRS obtained from Plaintiffs a list of clients who had participated in

Stock to Cash transactions.  It then launched audits of twenty-two such clients.  On or about October 1, 2008, the IRS sent "preliminary notice letters" (the "Letters") to those clients (the "Recipients"), explaining its position on the Stock to Cash program and asking the Recipients to file amended tax returns on that basis.  *See* Letter dated 10/01/2008 [Doc. 31-2], attached to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Opp. Memo.") as Ex. 2.  In the Letters, the IRS gave the Recipients certain information that Plaintiffs believe should have been kept confidential (collectively, the "Information").  The Information included (1) identification of Plaintiffs as possible "lenders" or administrators of the Stock to Cash program (the "identification of Plaintiffs"); (2) the statement that the IRS was conducting an investigation of the Stock to Cash program (the "investigation assertion");[1] (3) the IRS's position that the Stock to Cash transactions were "sham transactions" (the "sham-transaction assertion") and (4) the assertion that those transactions were "built into a Ponzi scheme" (the "Ponzi-scheme assertion").

The IRS agent in charge, Judy Steiner, says that the Ponzi-scheme allegation was added because the IRS had in the past received resistance from taxpayers who had been involved in similar transactions.  "The 'Ponzi scheme' language was included in the model notice letters to emphasize to the taxpayers that the transactions were not, in fact, valid, and that the transactions were a Ponzi scheme requiring new 'borrowers' to stay afloat."  Declaration of Judy Steiner ("Steiner Decl."), Ex. 3 to Defendant's Motion for Summary Judgment [Doc. 28-3], ¶ 25.  Nevertheless, when the IRS later sent versions of the Letters to two more taxpayers, the "Ponzi scheme" language was deleted.  Steiner gives two reasons for the deletion:  (1) after she consulted an IRS attorney, she decided that

---

[1]  Plaintiffs repeatedly and inaccurately assert that the Letters said that Plaintiffs themselves were under investigation. *See, e.g.,* Opp. Memo. at 1, 8.  The Letters in fact said that the IRS was investigating the  "'90% Loan' transaction."

3

the "Ponzi scheme" language was not necessary to convince the Recipients that the Stock to Cash "loans" were invalid; and (2) some Recipients felt they should be entitled to favorable tax treatment as "victims" of the scheme.  Steiner Decl. ¶ 26.

On September 23, 2009, Plaintiffs filed the present action.  The First Amended Complaint [Doc. 17] contains a single claim, for unlawful disclosure of Plaintiffs' return information.  The claim is based on 26 U.S.C. § 7431, which permits plaintiffs to recover damages when an officer of the United States knowingly or negligently discloses returns or return information in violation of Section 6103.  Plaintiffs seek, *inter alia*, $1,000 for each unauthorized disclosure of their return information.

## II.    LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex* at 322-23.  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  In this case, the parties disagree about the law but are not in disagreement about any fact that is relevant to the resolution of this Motion.

4

## III.    DISCUSSION

Plaintiffs assert that the Information is Plaintiffs' "return information" and thus subject to Section 6103, and Defendant does not dispute that point.  First Amended Complaint ¶ 12; Memorandum of Law in Support of the United States' Motion for Summary Judgment ("Supp. Memo.") [Doc. 28-1] at 6-7.  Defendant's failure to argue that the Information is not Plaintiffs' "return information" is justified by the extremely broad definition of "return information" in the statute, which includes, for example, "any other data ... collected by the Secretary [of the Treasury or his delegate] with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense."  26 U.S.C. § 6103(b)(2)(A). Defendant, however, argues that the IRS was nevertheless permitted to disclose the Information under three exceptions to the general rule against disclosure.  Supp. Memo. at 5.  The Court considers each of these exceptions in turn.

### A.    The "Own Information" Exception

Defendant argues that it was entitled to disclose the Information to the Recipients because it was their own return information.  Supp. Memo. at 7-8.  Defendant relies on 26 U.S.C. § 6103(e)(7):  "Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer, if the Secretary determines that such disclosure would not seriously impair Federal tax administration." The statute elsewhere states that a taxpayer's return "shall, upon written request, be open to inspection by or disclosure to (A) in the case of an individual–(i) that individual."  26 U.S.C. § 6103(e)(1).  The taxpayer is thus authorized to inspect his own return.  Those courts that have

5

addressed the issue have concluded that these provisions permit the INS to disclose to a taxpayer his

own return information, in addition to the return itself.  *See, e.g., Millennium Mktg. Gp., LLC v.*

*United States*, No. H-06-962, 2010 WL 1768235, at *13 (S.D. Tex. Feb. 9, 2010) and cases cited

therein.

The substantive question arising from these circumstances is whether all of the Information

was the Recipients' "own" return information in addition to being Plaintiffs' return information.

Because the statute itself does not define a taxpayer's "own" return information, and because the

Second Circuit has not spoken on this issue, Defendant cites three decisions from other circuits to

show that the Information was the Recipients' own return information.  Supp. Memo. at 7-10.  In

*Mid-South Music Corp. v. United States*, 818 F.2d 536 (6th Cir. 1987), the IRS sent a letter to

taxpayers who had invested in plaintiff Mid-South's tax shelter, telling them that deductions based

on the tax shelter would be disallowed, and that a taxpayer who claimed such a deduction might be

subjecting himself to a penalty.  The court held that the fact that a deduction for Mid-South's tax

shelter would be disallowed was information with respect to the taxpayers' own returns and thus

disclosable.  *Id* at 539.  That case, however, did not involve any statements that, like the Ponzi-

scheme allegation here, went beyond the facts necessary to explain the disallowance.

In *Balanced Financial Management, Inc. v. Fay*, 662 F.Supp. 100 (D.Utah 1987), with facts

similar to those in *Mid-South*, the court found that the identification of the plaintiff and reference to

investigation of the plaintiff did not constitute "return information" under Section 6103, and that in

any case such information was disclosable under Section 6103 exceptions.  The court's favorable

citation to a concurring opinion in *Mid-South* suggests that the court considered those facts to be the

recipients' own return information.  *Id.* at 106.  Again, there was no assertion in that case comparable

6

to the Ponzi-scheme assertion here.

In *Solargistic Corp. v. United States*, 921 F.2d 729 (7th Cir. 1991), the IRS had sent a letter to taxpayers who had invested in the plaintiff, Solargistic, telling them that Solargistic was under audit.  The court held that this information was the return information of each Solargistic investor, because the letters "were mailed as the initial step in adjusting the tax liability of the investors for the year in question" and the resolution of the audit "would directly impact the investors' taxes payable."  *Id.* at 731.  The disclosures that were at issue before the Seventh Circuit did not include any that were analogous to the Ponzi-scheme assertion.

Finally, in *Millennium Mktg. Gp., LLC v. United States*, No. H-06-962, 2010 WL 1768235, at *12-13 (S.D. Tex. Feb. 9, 2010), the IRS, in the course of audits of taxpayers who had invested in the plaintiff's Millennium Plan, characterized the Plan to the investors as, *inter alia*, a "scheme," "abusive," "noncompliant," "bad" and "illegitimate."  *Id.* at *12.  The court held that the IRS was entitled to make those statements to the investors because that information was the participants' own return information as well as Millennium's.

> The IRS's investigation of Plaintiffs directly impacted the amount of the investors' payable taxes, the propriety of proposed penalties, and whether they could participate in [a settlement].  It was therefore "data ... prepared by ... the Secretary .. with respect to the determination of the ... possible existence' of tax liability of the investors."  26 U.S.C. § 6103(b)(2)(A).  Thus, the information revealed by the agents is the return information of each of the [investors] as well.

*Id.* at *14.  *Millennium*, though not binding authority on this Court, suggests that in the present case the sham-transaction assertion was the Recipients' own return information.  But it is not clear whether any of the disclosures in *Millennium* included statements that were contextual rather than directly relevant to the recipients' tax liability, as is the case of the Ponzi-scheme assertion.

The precedents cited suggest that the Information was the Recipients' own return information if it consisted of facts that directly impacted the Recipients' tax liabilities. *See, e.g., Solargistic* at 731. By this standard, the Recipients' own return information included the identification of Plaintiffs, the disclosure that the Stock to Cash program was under investigation, and the sham-transaction assertion. Each of these pieces of information played a role in explaining to the Recipients why their tax liability was being adjusted and why they were expected to file amended returns. The identification of Plaintiffs occurs in a list of names of possible lenders or administrators of a Recipient's Stock to Cash transaction; it served to identify to the Recipients the transactions at issue. Both the investigation and sham-transaction assertions explain to the Recipients that transactions they had treated as "loans" were not loans, and hence explained the tax adjustment and the request for amended returns.

But the Ponzi-scheme assertion did not directly impact the Recipients' tax liabilities. Their "loans" would have been considered sales of stock whether or not the program was a Ponzi scheme. The fact that the transactions were "shams" was enough to establish to the Recipients that they were invalid, without a contextual reference to a larger Ponzi scheme. Indeed, as noted above, Steiner asserts that the Ponzi-scheme assertion was included in the Letters (but not in two later letters on the same subject) to deter taxpayer resistance to the IRS's finding. Steiner Decl. ¶¶ 26-27. The IRS evidently did not consider it necessary to give the Recipients that information to explain the tax adjustment, because they deleted it from later editions of the preliminary notice letters. In fact, Defendant, explaining in its Memorandum in Support why the IRS needed to disclose this information, said nothing about the Ponzi-scheme allegation. Supp. Memo. at 9. Whether or not the inclusion and then deletion of that allegation was reasonable in a larger sense, Defendant has not

established that the Ponzi-scheme assertion was the Recipients' own return information.

Plaintiffs argue that the "own information" exception does not apply to any of the three components of the Information.  Opp. Memo. at 10-18.  Since the Court has concluded that the exception applies to the identification of Plaintiffs, the investigation assertion, and the sham-transaction assertion, the Court here considers each of their three arguments.

### 1.    The absence of a written request

Plaintiffs argue that the IRS was not entitled to disclose the Information because none of the Recipients made a written request for it.  Opp. Memo. at 11-12.  However, the law they cite does not establish that a written request is necessary for the disclosure to a taxpayer of that taxpayer's own return information.  They cite the phrase "upon written request" in 26 U.S.C. § 6103(e)(1).  But that subsection refers to returns, not return information.  They also cite 26 C.F.R. § 301.6103(c)-1(e)(5).  But that regulation defines who may request information on behalf of a taxpayer; it does not impose a request requirement on the INS.

### 2.    No effect on the Recipients' tax liability

Plaintiffs distinguish this action from *Solargistic* by arguing that the Recipients were not partners or investors in the Emerging Money entities, and therefore "any fine, penalty or adjustment in tax imposed against EMC would have zero effect on the [Recipients'] return[s]."  Opp. Memo. at 13.  However, the facts agreed to by the parties show that the disclosure of the Information was directly related to potential adjustments in the Recipients' tax liabilities.  The IRS's conclusion that the Stock to Cash scheme had illegally shielded the Recipients from capital-gains tax resulted in an upward adjustment of the Recipients' tax liabilities and the demand that they file amended tax returns in that regard.  Nothing in *Solargistic* suggests that its holding is dependent on the fact that

the taxpayers were partners or investors in Solargistic.

### 3. The disclosure was unnecessary

Plaintiffs distinguish this case from *Mid-South* and *Balanced Financial* by arguing that here, Defendant disclosed more information than was necessary to inform the Recipients that there might be adjustments on their tax returns. Opp. Memo. at 15-17. As noted *supra*, most of the Information was necessary for that purpose, but the Ponzi-scheme assertion was not. Defendant replies that when the information in question is the recipient's own information, there is no requirement that the disclosure be necessary. Reply to Plaintiffs' Opposition to United States' Motion for Summary Judgment ("Reply Memo.") [Doc. 34] at 7. The point, however, is that the necessity of disclosing information to a recipient to explain his own tax liabilities is the justification for defining that information as his own return information.

Thus, the "own information" exception permitted the IRS to include in the Letters the identification of Plaintiffs, the investigation assertion, and the sham-transaction assertion, but did not cover the Ponzi-scheme assertion.

### B. The "Administrative Proceeding" Exception

Defendant also asserts that the IRS was entitled to disclose the Information under the Section 6103 exception for administrative proceedings. Supp. Memo. at 10-14. "A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only ... (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." 26 U.S.C. § 6103(h)(4). Defendant argues that the audit of Plaintiffs was an "administrative proceeding" and that the Stock to Cash

transaction was a "transactional relationship" between Plaintiffs and the Recipients.  Plaintiffs argue that this situation fails to meet three requirements for the "adminstrative proceeding" exception.  Opp. Memo. at 18-28.

### 1.    The "judicial or administrative proceeding" requirement

Plaintiffs first argue that an audit is not an "administrative proceeding."  Opp. Memo. at 19-24.  The Second Circuit has not decided whether an IRS audit is an "administrative proceeding," and the two circuits that have decided the issue have split.  *Mallas v. United States*, 993 F.2d 1111, 1121-24 (4th Cir. 1993) (an audit is not an administrative proceeding); *First Western Gov't Sec., Inc. v United States,* 796 F.2d 356, 360-61 (10th Cir. 1986) (an audit *is* an administrative proceeding).[2]  *See also Norman E. Duquette, Inc. v. Comm'r of Internal Revenue Serv.*, 110 F.Supp.2d 16, 20 (D.D.C. 2000) (adopting the *First Western* position); *Balanced Fin. Mgmt., Inc. v. Fay*, 662 F.Supp. 100, 106 (D.Utah 1987) (apparently assuming that an audit is an administrative proceeding).

The *First Western* court provided no explanation for its holding.  *Duquette*, however, did explain its holding that an audit is an administrative proceeding for Section 6103 purposes.   The court there reasoned that if the exception in Section 6103(h)(4) does not apply to audits, the broad definition of "tax return information" in Section 6103(b)(2) would prevent the IRS from telling audited taxpayers why their personal tax liabilities are being adjusted or might be adjusted.  *Duquette* at 20.  However, the existence of the "own information" exception discussed *supra* establishes that the IRS would, nevertheless, be able to provide such information to taxpayers.

---

[2]  The Ninth Circuit on one occasion appears to have assumed that an audit is an administrative proceeding.  *Delpit v. Comm'r Internal Revenue Serv.*, 18 F.3d 768, 770 (9th Cir. 1994).  However, that court later considered the matter to be undecided.  *Abelein v. United States*, 323 F.3d 1210, 1214 (9th Cir. 2003).

The Fourth Circuit's decision in *Mallas* contains a more extensive consideration of this question. As Defendant rightly observes, parts of its textual analysis do not carry water. Reply Memo. at 13-14. For example, *Mallas* asserts that if audits are administrative proceedings, the provision authorizing disclosures where necessary to obtain information in investigations, Section 6103(k)(6), would be rendered superfluous. *Mallas* at 1124. But in fact Section 6103(k)(6) is another matter, involving disclosures necessary to obtain information. However, *Mallas* makes more a persuasive point: "A review of a tax audit's mechanics reinforces the conclusion that an audit is merely an investigation. A revenue agent conducting a tax audit performs quintessentially investigative functions, such as examining a taxpayer's books, papers, records, and other materials, and deposing witnesses." *Id.* at 1123 n. 13. There is a provision for appeals of audits in the governing regulations, 26 C.F.R. § 601.106, but while the appeal is an administrative proceeding, that does not necessarily mean that the audit is also an administrative proceeding.

The observation in *Mallas* that an agent in an audit performs quintessentially investigative functions is the most plausible argument that has been advanced. The Court finds that the audits of the Recipients were not administrative proceedings. Although this finding is enough to establish that the administrative proceeding exception does not apply, the Court considers the parties' arguments on the other two requirements.

### 2.     The "transactional relationship" requirement

Defendant argues that there was a "transactional relationship" in the form of a "promoter/promotee relationship" between Plaintiffs and the Recipients. Supp. Memo. at 12-14. Plaintiffs say they had no transactional relationship with the Recipients because they only referred the Recipients to ACM, the lender, and did not fund the loans. Opp. Memo. at 25. The term

"transactional relationship" is certainly vague.  However, the courts that have spoken on the subject found that promoters have a transactional relationship with the persons to whom they promote alleged tax shelters.  *First Western Gov't Sec., Inc. v United States,* 796 F.2d 356, 360-61 (10th Cir. 1986); *First Western Gov't Sec., Inc. v United States,* 578 F.Supp. 212, 217 (D.Colo. 1984).  At least in the present case, that makes sense.  Plaintiffs and the Recipients were all importantly involved in the Stock to Cash transactions and dealt with each other, so in that sense they have a "relationship."  Plaintiffs concede that they promoted the Stock to Cash program to the Recipients.  Opp. Memo. at 3-4, 25.  Thus, the necessary "transactional relationship" existed.

### 3.   The effect requirement

Plaintiffs further argue that Section 6103(h)(4)(C) does not apply because the alleged transactional relationship did not directly affect the resolution of an issue in the IRS's audits of the Recipients.  Opp. Memo. at 27-28.  In *First Western*, the Tenth Circuit reasonably treated the question of whether the relationship directly affects an issue in the proceedings as equivalent to the question of whetherdoes the *disclosed information* directly affects an issue in the proceedings.  *First Western*, 578 F.2d at 360-61.  Here, as explained *supra*, most of the Information directly affected the audits of the Recipients, but the Ponzi-scheme assertion did not.  Thus, even if the administrative proceeding exception *did* apply to the rest of the Information, it would not apply to the Ponzi-scheme assertion.

Nevertheless, as noted *supra*, the administrative proceeding exception does not apply here because there was no administrative proceeding.

### C.   The "Investigative Purposes" Exception

Defendant also argues that the IRS's disclosure of the Information falls under the exception

13

in Section 6103(k)(6) for cases in which such disclosure is necessary to obtain information in investigations like the audits of the Recipients. Supp. Memo. at 14-18. Plaintiffs disagree. Opp. Memo. at 29-33. The dispute between the parties about this exception comes down to one issue: was it necessary for the IRS to disclose the Information to carry out its investigations? This question is closely similar to that of whether it was necessary for the IRS to disclose the Information to inform the Recipients about the change in their tax liabilities. In order to obtain the information it wanted from the Recipients, especially in the form of amended tax returns, the IRS needed to inform the Recipients about the identities of Plaintiffs, about the investigation of the Stock to Cash program, and about its finding that the "loans" were sham transactions. The IRS could not expect the Recipients to file amended tax returns without telling them what amendment to make and why. But Defendant has not explained why the IRS, in order to obtain the information it was looking for, needed to provide the Ponzi-scheme assertion. The "investigative purposes" exception applies to the rest of the Information, but not to the Ponzi-scheme assertion.

      **D.**     **The "Erroneous Information" Issue**

The parties devote sections of their briefs to arguments on the question of whether the Ponzi-scheme allegation was erroneous and whether erroneousness is relevant. Supp. Memo. at 18-19, Opp. Memo. at 33-37, Reply Memo. at 17-18. Usefully, the parties are in agreement that the issue of erroneousness is irrelevant to the question of whether the IRS violated Section 6103. Opp. Memo. at 33, Reply Memo. at 17. They are correct. In consequence, the Court need not address this issue further.

IV.     **CONCLUSION**

The Court finds that the IRS did not violate Section 6103 when it included in the Letters the identification of Plaintiffs, the investigation assertion, and the sham-transaction assertion.  It was permitted to do so under both the "own information" exception and the "investigatory purposes" exception.  However, the Court finds that these exceptions did not cover the IRS's assertion that the Stock to Cash program was a Ponzi scheme.  Defendant's explanation for the IRS's reason for including that assertion is weak, and is contradicted by the fact that the IRS did not find it necessary to include that assertion in later versions of the preliminary notification letter.

Defendant's Motion for Summary Judgment [Doc. 28] is GRANTED as to all disclosed information other than the assertion that the purported loans in the Stock to Cash program were "built into a Ponzi scheme," and DENIED as to that assertion.  Plaintiffs are instructed to file, no later than July 3, 2012, a statement as to whether they intend to pursue to trial the claim with respect to the "Ponzi scheme" assertion, which is now the only claim remaining in this action, and if so, a statement and explanation of the damages they seek.

It is SO ORDERED.
Dated: New Haven, Connecticut
            June 4, 2012

_____/s/ Charles S. Haight, Jr._____
Charles S. Haight, Jr.
Senior United States District Judge

15