## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

EMERGING MONEY CORP.,
EMERGING ADMINISTRATIVE
SERVICES, LLC, and EMERGING
ACTUARIAL DESIGNS, LLC,

                    Plaintiffs,

        v.

UNITED STATES OF AMERICA,

                    Defendant.

No. 3:09-cv-1502 (CSH)


**APRIL 14, 2014**

## RULINGS ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ON LIABILITY AND ON DEFENDANT'S MOTION RELATING TO DAMAGES

**HAIGHT, Senior District Judge:**

At the times pertinent to this action, the Plaintiffs provided various financial services to private individuals. Their suit against the Defendant United States of America (the Government) alleges that the Internal Revenue Service (IRS) violated 26 U.S.C. § 6103 by disclosing to third parties Plaintiffs' "return information" without Plaintiffs' consent, as required by the statutory scheme. 26 U.S.C. § 7431 permits plaintiffs to recover damages when an officer of the United States (here officers of the IRS) knowingly or negligently and without authority discloses returns or return information in violation of Section 6103.

In an earlier opinion, reported at 873 F. Supp. 2d 451 (D. Conn. 2012) ("*Emerging Money I*"), the Court granted in part and denied in part the Government's motion for summary judgment. The parties have now filed additional motions for summary disposition. Plaintiffs move for partial summary judgment on an issue of liability [Doc. 55]. The Government has filed two further motions

1

for summary judgment. The first of these motions [Doc. 57] seeks judgment dismissing Plaintiffs' action. The second motion [Doc. 63], filed in contemplation that the first motion may fail, prays for partial summary judgment limiting Plaintiffs' damages.

This Ruling resolves all three motions.

## I.   BACKGROUND

*Emerging Money I*, with which familiarity is assumed, sets forth in detail the facts and circumstances of this case. They are recounted herein only to the extent necessary to explicate the Court's resolution of the present motions.

Plaintiffs, Nevada or Delaware legal entities with principal places of business in Stamford, Connecticut, marketed to potential investors a program called "Stock to Cash" or "the 90% loan program." Some investors participated in the program. Agents in the regional IRS office determined after investigation that the program was twice damned. In the words of *Emerging Money I*, the IRS "concluded that these transactions were not in fact loans, but rather were sales of stock disguised as loans, evading the capital gains tax. In addition, the IRS determined that the Stock to Cash program was a Ponzi scheme, using money coming in from new investors to pay obligations to existing investors." 873 F. Supp. 2d at 453.

Energized by these suspicions, the IRS obtained from Plaintiffs a list of clients who had participated in Stock to Cash transactions, and sent to those clients ("the Recipients") model notice letters asking the Recipients to file amended tax returns. The Recipients were given that unwelcome request, the letters explained, because of "the IRS's position that the Stock to Cash transactions were 'sham transactions' (the 'sham-transaction assertion') and the assertion that these transactions were 'built into a Ponzi scheme' (the 'Ponzi-scheme assertion')." 873 F. Supp. 2d at 453. The notice letters

2

also advised the Recipients of the identity of Plaintiffs as possible "lenders" or administrators of the Stock to Cash program, and that the IRS was conducting an investigation into the program.

The Plaintiffs, predictably displeased by the letters sent to their clients by the IRS, filed this action against the Government alleging violation of 26 U.S.C. § 6103(a), which provides in pertinent part: "Returns and return information shall be confidential, and except as authorized by this title – (1) no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or employee or otherwise under the provisions of this section."

The Government's first summary judgment motion was based on the proposition that all the assertions in the IRS's letters to investors were covered by one or another of the several statutory exceptions to this general rule against disclosure. In *Emerging Money I,* the Court granted summary judgment to the Government "as to all disclosed information other than the assertion that the purported loans in the Stock to Cash program were 'built into a Ponzi scheme.'" Summary judgment was denied with respect to that assertion. 873 F. Supp. 2d at 460.

In view of the parties' contentions in the present motions, it is necessary to recite in some detail the manner in which the Court in *Emerging Money I* considered the IRS-perceived Ponzi scheme on the part of Plaintiffs. The Court first concluded that the Ponzi-scheme assertion in the IRS letters to investors did not fit within the "own information" exception to § 6103(a) confidentiality. The Government argued that "it was entitled to disclose the Information to the Recipients because it was their own return information." 873 F. Supp. 2d at 455. The Court said with respect to that exception:

> Both the investigation and sham-transaction assertions explain to the

3

Recipients that transactions they had treated as "loans" were not loans, and hence explained the tax adjustment and the request for amended returns.

But the Ponzi-scheme assertion did not *directly impact* the Recipients' tax liabilities. Their "loans" would have been considered sales of stock whether or not the program was a Ponzi scheme. The fact that the transactions were "shams" was enough to establish to the Recipients that they were invalid, without a contractual reference to a larger Ponzi scheme. . . . Defendant has not established that the Ponzi-scheme assertion was the Recipients' own return information.

*Id*. at 456.[1] For comparable reasons, the Court rejected the Government's contention that the IRS Ponzi-scheme assertion fell within the "investigative purposes" exception. On that issue, the Court said:

The dispute between the parties about this exception comes down to one issue: was it necessary for the IRS to disclose the Information to carry out its investigations? This question is closely similar to that of whether it was necessary for the IRS to disclose the Information to inform the Recipients about the change in their tax liabilities. In order to obtain the information it wanted from the Recipients, especially in the form of amended tax returns, the IRS needed to inform the Recipients about the identities of Plaintiffs, about the investigation of the Stock to Cash program, and about its finding that the "loans" were sham transactions. The IRS could not expect the Recipients to file amended tax returns without telling them what amendment to make and why. But Defendant has not explained why the IRS, in order to obtain the information it was looking for, needed to provide the Ponzi-scheme assertion. The "investigative purposes" exception applies to the rest of the Information, but not to the Ponzi-scheme assertion.

*Id*. at 459.

Against this background, I consider the three pending motions.

---

[1] I have emphasized the phrase "directly impact" as used in *Emerging Money I* because, as demonstrated in text *infra*, the parties' briefs on the present motions confer a certain prominence upon the phrase "directly impacts upon" or its companion phrase, "directly related to."

4

## II.  DISCUSSION

**A.**     **The Motions Concerning Liability**

Two of the three pending motions have to do with issues of liability.  I will consider those two motions together.

*Emerging Money I* concluded with the direction to Plaintiffs that they file "a statement as to whether they intend to pursue to trial the claim with respect to the 'Ponzi scheme' assertion, which is now the only claim remaining in this action, and if so, a statement and explanation of the damages they seek."  873 F. Supp. 2d at 460.  Plaintiffs' counsel responded with a statement [Doc. 49] declaring that Plaintiffs intended "to try the claim with respect to the 'Ponzi scheme' wrongful disclosure," and that Plaintiffs planned "to establish and pursue statutory and actual damages sustained as the result of the IRS's unauthorized disclosure and elect the greater of the two."  Doc. 49 at 1-2.  Depending on their ability to establish actual economic damages resulting from the disclosures, and further litigation developments, Plaintiffs also recite in Doc. 49 at 4-7 their right to claim punitive damages,  costs, and attorneys' fees.

Thereafter, Plaintiffs filed a motion for partial summary judgment [Doc. 55].  The motion refers to and summarizes the Court's conclusions in *Emerging Money I*, and prays that the Court now enter summary judgment "in [Plaintiffs'] favor and find that the disclosure of the Ponzi scheme assertion was a violation of Section 6103 of the Internal Revenue Code."  Plaintiffs' Brief on Motion [Doc. 55-1] at 5.  Plaintiffs say in their brief at that if partial summary judgment is granted in this respect, "[t]he remaining issues will be whether the wrongful disclosure resulted from a good faith, but erroneous interpretation of Section 6103, exempting the United States from liability under I.R.C. § 7431, and damages."  *Id.*

5

The Government responded to Plaintiffs' motion for partial summary judgment with three submissions of its own, all filed on the same day.  The first of these, Doc. 56, is a brief in opposition to Plaintiffs' motion.  The Government argues principally that Plaintiffs base their motion solely on the fact that "the Court previously denied the United States' motion for summary judgment," which "does not establish that the IRS violated § 6103, and it certainly does not entitle the Plaintiffs to judgment as a matter of law."  Doc. 56 at 2.  The Government criticizes Plaintiffs by saying that "if the Plaintiffs wanted the Court to rule in their favor, they should have cross-moved for summary judgment.  They did not."  *Id.*  The Government's second submission, Doc. 57, is a cross-motion for summary judgment dismissing Plaintiffs' action.  The Government says in that motion that in Plaintiffs' Doc. 55, "the Plaintiffs *moved to clarify* that the June 2012 decision [*Emerging Money I*] held that, as a matter of law, the Ponzi scheme assertion was a wrongful disclosure."  Doc. 57 at 2 (emphasis added).  The government says further: "In support of its motion, the United States answers *the Court's implicit call* for an explanation why the Ponzi scheme statement was directly related to the Recipients' own tax liability."  *Id.* (emphasis added).

The quoted and emphasized characterizations by the Government in Doc. 57 are rather odd. Plaintiffs' Doc. 55 is not a motion by them "to clarify" the Court's decision in *Emerging Money I*; it is a motion by Plaintiffs for partial summary judgment under Rule 56, Fed. R. Civ. P., based upon that decision.  And I am entertained, but not persuaded, by the Government's telling me that while I may have thought I was filing a opinion deciding issues, I was really issuing "an implicit call for an explanation" and waiting for the Government's answer,  which the Government has now furnished in these recent submissions.  That "implicit call for an explanation" Government counsel profess to hear is in reality a manufactured vehicle for making a new argument based on the Code.

6

That argument appears in the Government's brief accompanying its renewed motion for summary judgment:

> In this case, the Ponzi scheme assertion at issue did not merely provide context to the other statements in the letters [from the IRS to the Recipients]. That assertion was directly related to the Recipients' tax liability, *inter alia*, alerting the Recipients to the possible availability of a tax deduction that would impact their tax liability.

Doc. 57-1 at 8. That circumstance, the Government argues, brings the IRS's Ponzi scheme assertion within the non-disclosure exception found in § 6103(e) of the Code, captioned "Disclosure to persons having material interest." The Government's brief expands on that theory in its brief, Doc. 57-1 at 10:

> But the Ponzi scheme assertion carried its own implications for the Recipients' tax liabilities. Only the Ponzi scheme assertion relates to additional deductions – *e.g.*, theft loss – that the Recipients may be entitled to claim. In this way, of all the statements in the letters, the Ponzi scheme assertion is the most remote from the Plaintiffs' return information, and most closely related to the Recipients' tax liability. Thus, the Ponzi scheme assertion was authorized under § 6103(e).

If one accepts that theory, the Government is correct in contending that summary judgment should issue against Plaintiffs dismissing their action. That is because the Court held in *Emerging Money I* that all the other assertions in the IRS's letters to Recipients fell within one or another exception to the statutory prohibition against disclosure.

Preliminarily, it may be noted that there is no substance to the Government's contention that the Plaintiffs' present motion for partial summary judgment must fail because Plaintiffs should have prayed for that relief in a cross-motion to the Government's initial motion. Rule 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Whether a particular fact

is "material" depends upon the governing law; and the governing law must, of course, be taken into account in determining whether the movant "is entitled to judgment as a matter of law." In the case at bar, this Court's decision in *Emerging Money I* plays a significant part in declaring the governing law; or, if it be thought unseemly for a district judge to characterize his or her opinion as "governing law," it can at least be accorded the status of "law of the case" (until contrary appellate governing law comes along). The Plaintiffs and their counsel cannot be fairly criticized for making their motion for partial summary judgment after the Court's decision, rather than before it. Plaintiffs base their motion on the Court's decision, which the Court perforce had to write first. Plaintiffs correctly understand *Emerging Money I* to be a decision, as opposed to the Government, which professes a belief that the Court was asking a question.

Accordingly I consider Plaintiffs' present motion on its merits. Plaintiffs contend in that motion that the Court's decision *Emerging Money I* entitles them to a summary ruling that the IRS's Ponzi scheme assertion violated § 6103(a), on its merits. The Government's opposition contends that the assertion was authorized by § 6103(e). Unaccountably, the Government's present argument in support of that proposition is materially different from any contention it made during the course of its initial motion for summary judgment. Thus there is a certain irony in the Government's feeling free to criticize Plaintiffs for the timing of their contentions, while holding in reserve (or subsequently discerning) the contention the Government now makes, having been disappointed by the Court's judgment in *Emerging Money I.* While counsel for Plaintiffs express understandable irritation with the Government's litigation timing, it is preferable to consider the parties' contentions on their merits, and I extend that preference to the Government's cross-motion as well.

The Government's brief, quoted *supra*, seems to identify the purpose and intended effect of

8

the IRS's Ponzi scheme assertion as "alerting the Recipients to the possible availability of a tax deduction that would impact their tax liability." Doc. 57-1 at 8. That proclaimed purpose and effect might come as something of a surprise to Revenue Agent Judith A. Steiner, the IRS officer in charge of the underlying investigation into Plaintiffs, whose sworn declaration [Doc. 28-3] was submitted by the Government in support of its initial summary judgment motion. As *Emerging Money I* points out, 873 F. Supp. 2d at 453-454, a time came when the IRS *deleted* the Ponzi scheme assertion from letters being sent to Recipients. Agent Steiner's declaration states that the reasons for the deletion of the Ponzi assertion were the following:

> [T]he Service did not feel that language was necessary to convince the taxpayers that the "loans" they entered into were invalid and had significant adverse tax consequences. *Furthermore, the "Ponzi scheme" reference was causing some issues* because taxpayers felt that they should be entitled to additional losses given that they were "victims" of this scheme. Only later investors who did not receive the value of their shares at the conclusion of the "loan" would be entitled to any loss from the Ponzi scheme. The initial investors either walked away from the "loan" at maturity (because the shares were worth less than the loan balance) or did in fact receive the cash value (or actual shares) at the conclusion of the "loan." For these reasons, I removed the "Ponzi scheme" language in the letters.

Steiner Declaration [Doc. 28-3] at ¶ 26 (emphasis added). This language would seem to suggest that contrary to the Government's present contention that the IRS *included* the Ponzi scheme assertion in the letters to *alert* Recipients to a possible tax deduction, the IRS *deleted* the assertion from the letters in order to *refrain from alerting* or *encouraging Recipients to claim* a possible deduction.

Whatever mysteries or uncertainties might arise from Agent Steiner's declaration, the Government's present perceptions of what the Code authorizes IRS agents to disclose are clear enough. The case for the Government begins with the observation that section 1603(a) of the

Internal Revenue Code, 26 U.S.C. § 1603(a),  which Plaintiffs claim the IRS violated, provides that returns and return information are confidential "except as authorized by this title."  "Subsections (c) through (o) of § 6103 set forth various exceptions to the general rule that returns and return information are confidential and not to be disclosed."  *Church of Scientology of California v. Internal Revenue Service,* 484 U.S. 9, 15 (1987).  In the case at bar, the Government relies upon an exception found in § 6103(e), captioned "Disclosures to persons having material interest."  The instant case involves "return information" as that phrase is used in the statutory scheme.  Both parties agree that the assertions contained in the IRS's letters to Recipients comprise "return information."  In *Emerging Money I,* I had occasion to say: "Plaintiffs assert that the Information is Plaintiffs' 'return information' and thus subject to Section 6103, and Defendant does not dispute that point"; however, "Defendant argues that it was entitled to disclose the Information to the Recipients because it was their own return information."  873 F. Supp. 2d at 454-455.  What emerges from all this is the common-sense proposition that in a complex world of commercial give and take, the same declaration may constitute tax "return information" for more than one taxpayer.  Here, two groups of taxpayers were involved: the Plaintiffs, who were purportedly promoting a financial program, and the Recipients of the IRS letters, who had participated in the Plaintiffs' program.

How can the Ponzi scheme assertion in the IRS letters reasonably be characterized as "return information" in respect of the Recipients?  To revisit *Emerging Money I* briefly: I said there that the content of the IRS letters "was the Recipients' own return information if it consisted of facts that directly impacted the Recipients' tax liabilities," and concluded that "the 'own information' exception permitted the IRS to include in the Letters the identification of plaintiffs, the investigation assertion, and the sham-transaction assertion, but did not cover the Ponzi-scheme assertion."  873 F. Supp. 2d

at 456, 457.  In its present effort to salvage the Ponzi scheme assertion as included within the Recipients' return information, the Government now points to the broad definition of the term "return information" that appears in § 6103(b)(2). That subsection provides in pertinent part:

> The term "return information" means –
>
>    (A) a taxpayer's identity, the nature, source or amount of his income, . . . deductions, . . . tax liability, . . . or any other data . . . with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

With respect to the Recipients, that subsection leads the Government to other provisions in the Code, which the Government's main brief accurately describes, Doc. 57-1 at 6: "Unlike other taxpayers, victims of Ponzi schemes may be entitled to tax deductions under 26 U.S.C. § 165(a) and (c), which provides income tax deductions for losses due to theft."  Whether payments by a Ponzi scheme perpetrator to a participant in the scheme constitute taxable income or a non-taxable return of investment to the participant depends on the circumstances of the case; illustrative cases are collected in *Kooyers v. Commissioner of Internal Revenue*, 2004 WL 2930978 (Tax Court Dec. 20, 2004), at *12-*13.  The Government's argument in the case at bar is that given the provisions of § 165(a) and (c), the IRS's Ponzi scheme assertion in the IRS letters "was directly related to the Recipients' tax liability, *inter alia*, alerting the Recipients to the possible availability of a tax deduction that would impact their tax liability."  Brief, Doc. 57-1, at 8.  In consequence, the argument concludes, the IRS's inclusion of the Ponzi scheme assertion in its letters to some Recipients was an authorized disclosure of return information to the Recipients about the Recipients' own tax liability.

11

If the Government's § 165 theory of disclosure authorization (expressly stated for the first time in the present motion) depended upon a showing that IRS agents included Ponzi scheme assertions in letters to Recipients with the specific intent of "alerting the Recipients to the possible availability of a tax deduction," certain difficulties would arise. Agent Steiner's declaration, quoted *supra*, would seem to say that the IRS deleted Ponzi scheme assertions from the later letters for the overall purpose of concealing, not revealing, that possible availability. Moreover, the briefs for the Government enhance the potential for confusion. The Government's reply brief [Doc. 59] at 9 makes this criticism of Plaintiffs' opposing brief [Doc. 58]: "Plaintiffs claim that the United States argues that the Ponzi scheme assertion was 'designed to inform the taxpayers that they may be entitled to theft loss deductions. This is not accurate." Any charged inaccuracy in *Plaintiffs' briefs* is surely mitigated by seemingly contrary arguments *in the Government's earlier briefs*, specifically: The Ponzi scheme assertion "was directly related to the Recipients' tax liability, *inter alia*, alerting the Recipients to the possible availability of a tax deduction that would impact tax liability." Main Brief [Doc. 57-1] at 8; and "Section 6103 must be interpreted in a manner that permits the IRS to inform participants in suspect tax shelters of the reasons for their tax liability." Reply Brief [Doc. 59] at 4. These quotations can be read as acknowledgments by Government's counsel that Plaintiffs' counsel understood the Government's argument perfectly well.

Counsel for Plaintiffs seize upon these factors. The brief for Plaintiffs [Doc. 58] at 1 criticizes the Government for seeking "to take a second bite at the apple" of demonstrating that "its allegations of Plaintiffs' involvement in a Ponzi scheme were not a violation of Section 1603." Counsel place an understandable emphasis upon Agent Steiner's declaration; Plaintiffs' brief says: "There is no indication in Steiner's declaration, or in any exhibit provided by the government, that

the intent of the Ponzi scheme language was to notify taxpayers that they were entitled to a theft loss." *Id*. at 6.  On Plaintiffs' theory of the case, it is important for the Court to know "how the Ponzi scheme allegation impacted each of the taxpayers who received the preliminary notices in this case." *Id.*  In aid of that theory, Plaintiffs request discovery "on the internal correspondence and documents referencing the drafting of the preliminary notice and its subsequent removal in order to examine and verify any unsupported excuse promulgated by the Defendant."  "Such verification is necessary," Plaintiffs assert, "in order to sort through the Defendant's conflicting positions." *Id*.  Plaintiffs' principal contention is that the Ponzi scheme allegation "was not necessary to convey the availability of a tax loss," a circumstance mandating the conclusion that "the Ponzi scheme assertion did not directly impact the Recipients' federal tax liabilities, and do not constitute 'own return information' subject to disclosure." *Id.* at 7.

There is considerable merit to Plaintiffs' criticisms of the manner in which the Government structured and presented its several justifications for disclosure of the Ponzi scheme assertion to IRS letter Recipients.  However, the case does not depend upon whether the Government presented its arguments artfully or with maximum clarity.  The decisive question is whether the Government's reading of the Code authorizes disclosure as a matter of law, thereby dispensing with any further inquiry into surrounding factual circumstances.  One may readily agree that the § 165 theft-deduction concept could and should have been included by the Government in its first motion for summary judgment.  But the belated emergence of that concept in this renewed motion works no unfair prejudice upon Plaintiffs in a case which turns solely upon a question of law, uncomplicated by untimely assertions of disputed issues of fact.

While the question is closer than the Government would acknowledge, I conclude that it must

be answered in the Government's favor and the Plaintiffs' action dismissed.  The Government has now succeeded in connecting the dots built into a statute that is itself far from a model of clarity. The § 6103(a) dot (authorizing exceptions to prohibition of disclosure of return information) leads to the § 6103(e) dot (authorizing disclosure to persons having material interest), which leads back to the § 6103(b)(2)(A) dot (broadly defining "return information"), which leads finally to § 165 (allowing a theft-loss deduction of the sort contemplated by § 6103(b)(2)(A)).  That interconnection of Code provisions is sufficient to establish that the Ponzi scheme assertion "directly impacted" the Recipients' tax liabilities, in the sense I used that phrase in *Emerging Money I* (perhaps with a lack of perfect clarity).  The assertion had that impact because it called the Recipients' attention to a potential lessening of their tax liabilities (if they were victims of a Ponzi scheme under certain circumstances).  Contrary to the Plaintiffs' contention, the Government, in order to justify *disclosure* of a *potential* impact under this statutory scheme allowing disclosure, need not take a further step down the timeline of events and prove that a particular Recipient-taxpayer *actually incurred* a deductible Ponzi scheme loss.  The Government is entitled to summary judgment if a proper reading of the Code's disclosure provisions authorized this disclosure – whatever may or may not have transpired thereafter.  These provisions have that effect.

Given these statutory provisions for disclosure, Plaintiffs' claims that the IRS agents in this case did not need to make the Ponzi scheme assertion to alert the Recipients to the possibility of a tax deduction, a function performed adequately by other assertions in the letters, or that the agents gratuitously threw in the Ponzi reference for improper reasons, do not in this Rule 56 setting raise issues of *material* fact under the governing law.  As a general proposition, under § 1603 of the Code disclosure of return information is authorized or it is not.  Whether a particular disclosure is

14

necessary to accomplish a particular purpose is not relevant to that issue.  When Congress wished to condition disclosure upon necessity, it did so; *compare* § 6103(k)(6) (authorizing disclosure by IRS of return information "to the extent that *such disclosure is necessary* in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax . . . ") (emphasis added).  No required showing of necessity is implicated by the disclosures in this case.[2]

Nor am I persuaded that purposes or motives of the IRS agents in making the authorized disclosure of return information in this case are an appropriate subject for judicial inquiry, overview or supervision.  Conceptually, one may perhaps envision a case where an IRS agent's motive in making an otherwise authorized disclosure was so outrageous as to offend the spirit if not the letter of the Code, with consequences to be determined if such a case is presented.  But this is not such a case.

For these reasons, the Government's motion for summary judgment on liability will be granted.

**B.     <u>The Motion Concerning Damages</u>**

The Government has also filed a motion seeking to preclude or limit any award of damages to Plaintiffs, should Plaintiffs prevail on the present liability motions.  Since the Government will be granted summary judgment on liability, and Plaintiffs' action will be dismissed with prejudice, the Government's motion on damages will be denied as moot.

---

[2]  To the extent the Court's decision in *Emerging Money I* suggests that the IRS's disclosure of the Ponzi scheme assertion was not authorized because it was not necessary to alert letter Recipients to a possible tax deduction, the suggestion was improvidently made, for the reasons stated in text, and the Court abandons it.

## III.   CONCLUSION

For the foregoing reasons, the motions in this case are disposed of as follows:

Plaintiffs' Motion for Partial Summary Judgment [Doc. 55] is DENIED.

Defendant's Cross-Motion for Summary Judgment [Doc. 57] is GRANTED.

Defendant's Motion to Limit Plaintiffs' Damages [Doc. 63] is DENIED AS MOOT.

In these circumstances, Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.  The Clerk of the Court is directed to close the file.

It is SO ORDERED.


Dated:   New Haven, Connecticut
          April 14, 2014



                                            /s/Charles S. Haight, Jr.
                                            CHARLES S. HAIGHT, JR.
                                            Senior United States District Judge

16